STATE, Respondent, v. GRAHN, Appellant.

*September 6—October 1, 1963.*

For the appellant there was a brief by *Simon Horwitz* of Oshkosh, and *George J. Laird* of Fond du Lac, and oral argument by *Mr. Laird*.

For the respondent the cause was argued by *Jack D. Steinhilber,* district attorney of Winnebago county, with whom on

the brief were *George Thompson,* attorney general, and *William A. Platz,* assistant attorney general.

FAIRCHILD, J.   The record presented the trial judge with typical fact-finding problems of determining credibility of witnesses and weighing testimony which could not all be true and accurate. The complaining witness was a girl, aged about nine and one-half at the time of the alleged offense. Within an hour or so after the event she positively identified defendant as the man who molested her. She identified him at the trial. On both occasions, defendant denied having anything to do with her, and claimed that he had been at home. Three witnesses testified he was at home at the time of the offense. The trial judge deemed the little girl's testimony "quite certain and straightforward in all particulars" and evidently did not believe defendant, nor accept as accurate the testimony of the witnesses supporting his alibi.

The little girl testified that on September 1, 1962, at about 11:30 a. m., she took her dog for a walk and visited a pond near a golf course. Two other dogs were there, and played with her dog. While in the area she was accosted by a man she did not know, and he took various liberties with her person. She ran home and told her parents, who called the sheriff. The officer who answered the call received it at about 12:17 p. m.

The little girl, her parents, and the officer went to the area, but found no one. The record does not show the distance from it to defendant's home, but indicates that it is not far, and that from the defendant's backyard one could look down to the area in question. The group drove up and down each of two streets in the area. They observed several men during this process, but in each case the little girl said that was not the man. When they approached defendant's home, they saw two dogs in the yard, and she said they were the two she had seen earlier. Defendant was observed through

a window in his garage. The officer left the car and asked defendant to come out and talk with him. When defendant did so, the little girl had a look at him from about 30 feet away. She then said he was the man.

When defendant was informed of her accusation, he denied having anything to do with her and said he had been home all morning, and that the dogs had been loose and had just returned. The officer asked if anyone else had been present, and defendant said his eleven-year-old son had been in the yard, but was not there at all times. The officer had two later conversations with defendant, but he did not refer to having a telephone call from a Mrs. Hahn.

Later he filed a notice of alibi asserting that his older son and daughter-in-law had been at the home and talked with him about 11:30 a. m.; that he received a phone call from Mrs. Hahn at about 11:40; and that his younger son was home from 11 to 12 o'clock. Defendant, the older son and his wife, and Mrs. Hahn testified to these events, but the younger son was not called.

The son and daughter-in-law testified they had called at the home to borrow a trailer at 11:30 a. m. They did not see defendant, who was inside the house, but exchanged a few words with him about taking the trailer. They were there approximately ten minutes.

Mrs. Hahn testified that on Saturday, September 1st, she was attempting to get in touch with defendant's wife. The latter was not at home, but Mrs. Hahn spoke twice by telephone with defendant. The second call began at 11:40 a. m. She had just called the telephone company and been given the correct time. She ended the conversation after she looked at her watch and saw it was 12:02. She was sure of the date because it was the second day of her vacation, Friday (August 31st) having been the first day. She testified at one point it was the first day of the Chicago & North Western Railroad strike, but later said the strike started August

30th at 6 a. m. and "this was the first day they were really striking up in Green Bay." Her husband was participating in the strike. At another point she said the call was the second day of the strike, but was evidently thinking of Friday as having been August 30th instead of August 31st. She admitted she had told an officer who checked the notice of alibi that the call had been the first day of the strike, but said she later realized it was the second day. The trial court considered her testimony "somewhat variable as to what day this telephone conversation actually did take place."

Defendant contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt.

He relies heavily upon the testimony of the alibi witnesses. We do not find that the judge was for any reason obliged to accept their testimony as accurate even if he believed they were attempting to be truthful.

Testimony supporting an alibi does not raise a reasonable doubt as a matter of law.

"The defense of an *alibi,* if sufficiently established to raise a reasonable doubt in the minds of the jury, is a good defense. However, owing to the ease with which persons may be mistaken in dates long after the occurrence of a particular event, the ease with which an *alibi* may be made, and the difficulty of proving to the contrary, courts have not generally considered evidence of an *alibi* a conclusive defense. It is merely evidence to be weighed by the jury." [1]

Defendant contends that the court should not have believed the little girl's testimony identifying the defendant as the molester. Before coming to defendant's home she told the officer the man was tall and thin, did not have very much hair, had on faded blue jeans, and a white or light-colored, short-sleeved shirt. She did not refer to his wearing glasses. When they saw defendant at home, he had on faded overalls

---

[1] *State ex rel. Dewey v. Kibbe* (1925), 186 Wis. 210, 212, 202 N. W. 333.

and a faded work shirt; the officer did not remember whether it had short or long sleeves. He was wearing glasses, and is five feet, seven and one-half inches tall. Defendant attempts to make points of the discrepancies, including the defendant's height, although he may have seemed tall to the little girl. In our opinion none of these points prevent belief of the girl's testimony. We did not have the benefit of seeing and hearing the witnesses, as did the county judge, but we gain the impression from reading the record that the little girl was intelligent, observant, and truthful.

On rebuttal, the state offered a copy of a newspaper dated Thursday evening, August 30, 1962. The principal front-page story stated that a telegraphers' strike had shut down the Chicago & North Western at 7 a. m. that day. Defendant objected. The court noted that this was a trial without a jury and admitted the exhibit "for what it's worth." Defendant contends this was error.

Cases generally hold that newspaper articles, when introduced to prove the truth of statements therein, are inadmissible as hearsay,[2] although there is a well-recognized exception to this rule where a newspaper is offered to prove market quotations on specific dates.[3] A court could take judicial notice of the occurrence of this particular strike, which was an event of national importance, and newspapers would doubtless be reliable sources from which to verify the date on which it began. Assuming, however, that it was error to admit the newspaper in evidence, it was not prejudicial. Mrs. Hahn had testified the strike began on August

---

[2] *State v. Otis Elevator Co.* (1952), 10 N. J. 504, 92 Atl. (2d) 385; *Haralambo's Admr. v. Christopher* (1929), 231 Ky. 550, 21 S. W. (2d) 983; *Bebbington v. California Western States Life Ins. Co.* (1947), 30 Cal. (2d) 157, 180 Pac. (2d) 673; *Heyman v. Bellevue* (1951), 91 Ohio App. 321, 108 N. E. (2d) 161. But see *Dallas County v. Commercial Union Assur. Co.* (5th Cir. 1961), 286 Fed. (2d) 388.

[3] See Anno. 43 A. L. R. 1192.

30th at 6 a. m., and her difficulty in relating the date of the telephone call to the date of the beginning of the strike appeared from her own testimony.

Defendant makes some objection to a statement by the court in making the finding of guilt, pointing out, in connection with the testimony concerning Mrs. Hahn's telephone call, that defendant had not mentioned the call to the officers although interviewed several times. The testimony of one of the officers was that upon being asked if anyone had been present to verify defendant's being at home, defendant had named his younger son. In the light of this statement, and in weighing the testimony concerning the telephone call, the court could properly consider defendant's failure to mention the telephone conversation.

Defendant requests us to exercise our discretionary power to order a new trial under sec. 251.09, Stats. It does not appear to us, however, that it is probable that justice has miscarried.

*By the Court.*—Judgment affirmed.